UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FORJAS Y MACQUINADOS, S.A.
De C.V. and VIRTEL S.A. de C.V.,
foreign corporations,

Case No. 17-12187

Honorable Nancy G. Edmunds

    Plaintiffs,

v.

MECTRON ENGINEERING
COMPANY, INC., a domestic
corporation

    Defendant.

_____/

**ORDER AND OPINION GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [19]**

Pending before the Court is Defendant Mectron Engineering Company's motion for summary judgment. (ECF No. 19.) Plaintiffs oppose the motion. On January 19, 2018, the Court held a hearing in connection with Defendant's motion. For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** the motion.

**I.    Background**

Plaintiffs are members of a joint venture that manufacturers various knurled products, such as nuts, used in the manufacturing of automobiles. Defendant manufactures high speed inspection systems. This dispute arises out of Plaintiffs' purchase of an HSN100 inspection machine from Defendant for the purpose of inspecting the presence of "thread" or "no thread" in certain products manufactured by Plaintiffs.

In January 2015, Plaintiffs' representatives contacted Defendant about purchasing an inspection machine for the purpose of inspecting and sorting a particular nut

1

manufactured by Plaintiffs for sale to Nissan for use in Nissan's vehicles. This product is referred to by the parties as the "Nissan Nut." Plaintiffs told Defendant that they were having a problem with the Nissan Nut such that customers were receiving pieces without thread and that a visual inspection was not able to remedy the situation.

Defendant told Plaintiffs that it could probably provide a solution for its Nissan Nut inspection problem. In February 2015, Defendant presented Plaintiffs with a proposal (referred to by the parties as "Proposal A") which provided for the purchase of a HSN100 inspection machine capable of inspecting the Nissan Nut. The HSN100 described in Proposal A included one nut feeding bowl and one camera. The cost of the HSN100 described in Proposal A was $76,420.

In August 2015, at Plaintiffs' request, Defendant submitted a revised proposal ("Proposal B") to accommodate the manufacture and purchase of a HSN100 capable of sorting and inspecting the Nissan Nut and several of Plaintiffs' other products.[1] Proposal B included line items for an additional feeding bowl and two additional cameras which were necessary to enable the HSN100 to inspect the Nissan Nut and Plaintiffs' additional products. The cost of the HSN100 described in Proposal B was $147,320, nearly double the cost of Proposal A. While it is clear from the record that the HSN100 agreed to in Proposal B was supposed to be capable of inspecting up to eight of Plaintiffs' other products, it is not clear which specific additional products were actually agreed to be incorporated into the HSN100. This is because Proposal B does not expressly identify the products that will be inspected by the HSN100. Instead Proposal B states that after

---

[1]While Proposal B is not signed by Plaintiffs, the parties agree that Proposal B reflects the operative agreement between them.

Plaintiffs delivered samples of its products to Defendant for testing, Defendant will tell Plaintiffs which products will work on the HSN100.

From August 2015 through approximately March 2015, Defendant worked on completing the HSN100 for Plaintiffs. In April 2016, the HSN100 arrived at Plaintiffs' facility in Mexico. Plaintiffs allege that they began experiencing problems with the HSN100 from the time it arrived at their facility. According to Plaintiffs, the HSN100 never fully performed as promised, and, in January 2017, completely stopped working. Plaintiffs claim that because Defendant was unable or failed to repair or replace the HSN100, and did not respond to Plaintiffs' requests for a refund, Plaintiffs filed this lawsuit asserting claims for breach of contract, breach of warranty, fraud, fraudulent inducement, and fraud by omission. Plaintiffs allege that the HSN100 never actually performed as represented by Defendant, and even when it did work, it was only capable of inspecting the Nissan Nut and could not inspect any of Plaintiffs' other products as required by Proposal B. Plaintiffs seek to rescind their agreement and recover damages from Defendant, including lost profit damages, consequential damages, and exemplary damages.

Defendant moves for summary judgment arguing that no genuine issues of material fact exist as to Plaintiffs' claims. Defendant contends the summary judgment evidence conclusively demonstrates that it satisfied all of its contractual obligations, and that any issues with the HSN100 were caused by Plaintiffs' own failures—such as the failure to properly clean the machine or the failure to adequately train its employees to use the machine. Defendant further argues that Plaintiffs' claims are barred by the limited warranties, limited remedy of "repair or replace", and limitations of damages provision contained in the parties' contract. Finally, Defendant argues that Plaintiffs' fraud based

3

claims, including its claim for fraudulent inducement, are barred by the economic loss doctrine.² Plaintiffs oppose the motion and argue there are several issues of fact that preclude summary judgment.³

**II.     Summary Judgment Standard**

"Summary judgment is proper only if the moving party shows that the record does not reveal a 'genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Benison v. Ross*, 765 F.3d 649, 658 (6th Cir.2014) (quoting FED. R. CIV. P. 56(a)). A genuine issue of material fact exists when there are "disputes over facts that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). But "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (internal quotation marks omitted) (citing *First Nat. Bank of Ariz. v. Cities Servs. Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

This Court has subject matter over this dispute on diversity grounds. (*See* ECF No. 1.) "[F]ederal courts sitting in diversity 'apply state substantive law and federal procedural law.'" *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,* 559 U.S. 393, 417, 130 S.Ct. 1431, 176 L.Ed.2d 311 (2010) (quoting *Hanna v. Plumer,* 380 U.S. 460, 465, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965)). When deciding issues of substantive law, this Court

---

² Plaintiffs concede that their fraud based claims other than their fraudulent inducement claim (counts IV and V) are barred by the economic loss rule. Summary judgment is therefore granted as to these claims.
³ In their response brief, Plaintiffs argue that the evidence actually establishes that they are entitled to summary judgment as a matter of law on their breach of contract claim and request that the Court grant judgment in their favor. Plaintiffs have not actually moved for summary judgment. But even if they had, as discussed below, genuine issues of material fact preclude summary judgment in Plaintiffs' favor on their breach of contract claim.

4

must apply the law of the state's highest court. *Saab Auto. AB v. Gen. Motors Co.,* 770 F.3d 436, 440 (6th Cir.2014). If the state's highest court has not decided the applicable law, the state law must be ascertained "'from all relevant data,' which includes the state's appellate court decisions." *Id.* (quoting *Garden City Osteopathic Hosp. v. HBE Corp.,* 55 F.3d 1126, 1130 (6th Cir.1995)).

III.   Analysis

A. **Plaintiffs' breach of contract and breach of warranty claims**

"Under Michigan law, the elements of a breach of contract claim are: (1) the existence of a contract between the parties, (2) the terms of the contract require performance of certain actions, (3) a party breached the contract, and (4) the breach caused the other party injury." *Burton v. William Beaumont Hosp.,* 373 F.Supp.2d 707, 718 (E.D.Mich.2005) (citing *Webster v. Edward D. Jones & Co., L.P.,* 197 F.3d 815, 819 (6th Cir.1999)). To prevail on summary judgment, Defendant must establish that there are no genuine issues of material fact with respect to each of these elements. Here, Defendant argues that no genuine issues of material facts exist with respect to Plaintiffs' breach of contract and breach of warranty claims. Specifically, Defendant claims that Plaintiffs fail to identify any actual breach of the parties' agreement.

Defendant's position is not supported by the record in this case. As the long, detailed, and conflicting factual backgrounds provided in the parties' briefing reflects, there remain several disputed genuine issues of material fact as to whether Defendant breached the parties' agreement. Indeed, the parties submit differing accounts of almost every stage of their relationship. For example, the parties produce conflicting evidence concerning the HSN100's actual and expected sorting speed, its capabilities and

5

performance, and its failure rates. There is also conflicting evidence concerning the training of Plaintiffs' employees, the required maintenance for the HSN100, and Defendant's efforts to repair the HSN100. Despite Defendant's assertion to the contrary, the summary judgment evidence does not conclusively establish that the HSN100 could sort and inspect the Nissan Nut in the manner agreed to by the parties.

Moreover, the record is clear that Defendant failed to deliver a machine capable of inspecting Plaintiffs' additional parts as required by the parties' agreement. And while Defendant argues that its performance was excused because Plaintiffs allegedly instructed Defendant to only focus on the Nissan Nut, this issue, as well as many others, presents genuine issues of material fact to be decided at trial. Summary judgment on Plaintiffs' breach of contract and breach warranty claims is therefore not proper.

### B. Proposal B's limited remedy and limitation of damages

Defendant argues that even if there are genuine issues of material fact as to the alleged breach, Plaintiffs' claims are barred by the limited remedy and limitation of damages provisions in Proposal B. The Court agrees with Defendant that Proposal B limits the damages available to Plaintiffs in this dispute. However, Defendant fails to establish it is entitled to summary judgment on its limited remedy defense.

**(1) Limited remedy**

Proposal B provides that Plaintiffs' only remedy in the event of an issue with the HSN100 will be repair or replacement of the HSN100. Defendant argues that this provision expressly bars Plaintiffs' breach of contract and warranty claims for damages in this lawsuit. In response, Plaintiffs argue that the limited remedy should not apply because Defendant failed to honor the limited remedy. Plaintiffs contend that the limited

remedy failed its essential purpose because Defendant failed and refused to repair or replace the HSN100.

Under Michigan law, where a seller fails to perform or takes too long to complete the repairs or replacement, a limited remedy fails of its essential purpose and the plaintiff can seek general damages. *See Computer Network, Inc. v. AM Gen. Corp.*, 265 Mich. App. 309, 314, 696 N.W.2d 49, 54 (2005); *Fargo Mach. & Tool Co. v. Kearney & Trecker Corp.,* 428 F. Supp. 364, 383 (E.D. Mich. 1977). In *Fargo Mach. & Tool Co.* the contract for purchase of an industrial machine contained a limited remedy of repair or replace, but repair or replacement of the machine would not cure the breach because the defendant could not actually make the machine contracted for in the parties' agreement. 428 F. Supp. at 383. The court found that the plaintiff was therefore entitled to recover general damages because the remedy of repair or replace failed its purpose. *Id.*

Here, genuine issues of material fact exist as to whether the limited remedy of repair or replace failed its essential purpose. The parties dispute, among other things, whether Defendant honored its obligation to repair the HSN100. There are also questions of fact as to whether Defendant was even capable of repairing or replacing the HSN100. As discussed above, the summary judgment evidence does not conclusively establish that Defendant ever completed manufacturing the HSN100 machine agreed to by the parties. It strains credulity that a party would be bound by a limited remedy of repair or replacement where the manufacturer fails to deliver the purchased product and there are questions of fact as to whether it is even possible for the manufacturer to make the product it promised to deliver. Accordingly, Defendant is not entitled to summary judgment on its limited remedy defense.

**(2) Limitation of Damages**

Defendant argues that Proposal B bars Plaintiffs' claims for consequential damages and lost profits. Proposal B includes the following disclaimer of damages:

> **EXCEPT AS OTHER WISE SET FORTH HEREIN, THE LICENSED SOFTWARE AND EQUIPMENT IS PROVIDED "AS IS" WITHOUT WARRANTY OF ANY KIND, EITHER EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, THE IMPLIED WARRANTIES OF MERCHANTABILITY OF FITNESS FOR A PARTICULAR PURPOSE.**
>
> **\* \* \***
>
> **IN NO EVENT WILL MECTRON BE LIABLE FOR ANY CLAIMS INCLUDING BUT NOT LIMITED TO TAXES, SPECIAL ASSESMENTS, PENALTIES, FINES OR THE LIKE MADE OR IMPOSED BY ANY THIRD PARTY INCUDING ANY GOVERNMENTAL AUTHORITY OR ANY DAMAGES INCLUDING ANY LOST PROFITS, LOST SAVINGS OR OTHER INCIDENTAL OR CONSEQUENTIAL DAMAGES OR EXPENSES INCURRED BY LICENSEE, WHICH ARISE OUT OF OR RELATED TO THIS AGREMENT OR ITS SUBJECT MATTER, INCLUDING LICENSEE'S USE OF OR INABILITY TO USE THE PURCHASED EQUIPMENT OR SOFTWARE, EVEN OF MECTRON OR IT'S AGENT HAS BEEN ADVISED OF THE POSSIBILITY [sic] OF SUCH CLAIMS, DAMAGES OR EXPENSES**

Plaintiffs respond that this provision should not apply because: (1) the limitation is not conspicuous; (2) the provision only applies to issues with the software, not to the entire HSN100 system; and (3) the limited remedy fails its essential purpose.[4] The Court disagrees.

Proposal B's disclaimer of damages provision is conspicuous. The text is bolded,

---

[4] Plaintiffs also argue that the provision should not apply because it was not actually included in the parties' final agreement. This argument has no merit and conflicts with Plaintiffs' own brief. Plaintiffs' Exhibit 2, which they define as "Proposal B" and which they identify as being the contract between the parties, does in fact contain the limitation of damages provision at issue.

in all capitalized letters, and located on page four of a six page proposal. *See Pidcock v. Ewing*, 371 F. Supp. 2d 870, 880 (E.D. Mich. 2005) (quoting M.C.L. § 440.1201(10)) ("A term or clause is conspicuous 'when it is so written that a reasonable person against whom it is to operate ought to have noticed it.' The section also states that a printed heading in capital letters or larger or contrasting type or color is conspicuous.").

The provision is also clear and unambiguous. There is no reasonable reading of this provision that would restrict its application to only issues with the HSN100's software or hardware as opposed to the machine as a whole. The provision expressly limits recovery of lost profits or consequential damages, "which arise out of or [sic] related to this agreement or its subject matter."

Finally, the provision is not related or connected to Proposal B's limited remedy of repair or replace. Plaintiffs do not identify any basis for the Court to disregard the parties' agreement to limit the recovery of consequential or lost profit damages because the separate and unrelated limited warranty may have failed its essential purpose. Accordingly, while Plaintiffs may be entitled to recover their actual damages in connection with their breach of contract claim, Defendant is entitled to summary judgment on Plaintiffs' claims for lost profits and consequential damages.

## C. Plaintiffs' fraudulent inducement claim

Plaintiffs claim they were fraudulently induced into entering the contract for the purchase of the HSN100. Fraudulent inducement occurs where a party materially misrepresents future conduct under circumstances in which the assertions may reasonably be expected to be relied upon and are relied upon. *Ypsilanti Cmty. Utilities Auth. v. Meadwestvaco Air Sys., LLC*, 678 F. Supp. 2d 553, 566–67 (E.D. Mich. 2009).

9

It is a tort claim that applies to a situation where one party was allegedly tricked into contracting by another party. *Llewellyn-Jones v. Metro Prop. Grp.*, LLC, 22 F. Supp. 3d 760, 778 (E.D. Mich. 2014) (citing *Huron Tool & Eng'g Co. v. Precision Consulting Servs., Inc.,* 209 Mich.App. 365, 371, 532 N.W.2d 541, 544 (1995)). To establish fraud in the inducement, a party must show that: (1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth and as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage. *Llewellyn-Jones*, 22 F. Supp. 3d at 778–79.

Defendant argues that Plaintiffs' fraudulent inducement claim is barred by the economic loss doctrine. Defendant also contends that it is entitled to summary judgment on Plaintiffs' fraudulent inducement claim because Plaintiffs fail to identify any affirmative misrepresentations of material fact that could form the basis of a fraudulent inducement claim.

The economic loss doctrine is a judicially created doctrine that prohibits a party to a contract from bringing tort claims that are factually indistinguishable from breach of contract claims. *Llewellyn-Jones*, 22 F. Supp. 3d at 778 (citing *Detroit Edison Co. v. NABCO, Inc.,* 35 F.3d 236, 240 (6th Cir.1994)). The doctrine draws a line between breach of contract claims arising from commercial transactions, where commercial and contract law protect the parties' economic expectations, and tort actions intended to remedy unanticipated injuries caused by conduct that violates a separate legal duty apart from

the contract. *Id.* (citing *Neibarger v. Universal Cooperatives, Inc.,* 439 Mich. 512, 521, 486 N.W.2d 612, 615 (1992)).

Although fraudulent inducement can be an exception to the economic loss doctrine, the economic loss doctrine bars a fraudulent inducement claim that is not "extraneous" to the contractual dispute. *Orleans Int 'l, Inc. v. Mistica Foods, L.L.*C., No. 15-13525, 2016 WL 2851349, at *5–6 (E.D. Mich. May 16, 2016) (discussing *Huron Tool & Eng'g Co.,* 209 Mich.App. at 374–75, which held that a plaintiff may only pursue a claim for fraud in the inducement that is extraneous to the alleged breach of contract). In order to determine whether a fraud in the inducement claim is barred by the economic loss doctrine, the key inquiry is whether the defendant's alleged misrepresentation is "but another thread of fabric in the contract claim or an extraneous misrepresentation that actually induced the party to execute the contract." *Huber v. Crop Prod. Servs., Inc.,* 2007 WL 2746625, *6 (E.D. Mich. 2007). If the true nature of the plaintiff's action is a claim for breach of contract, the economic loss doctrine bars the fraud in the inducement claim. *See Dinsmore Instrument Co. v. Bombardier, Inc.,* 199 F.3d 318, 321 (6th Cir. 1999). As the Sixth Circuit has explained, where the defendant's misrepresentations were alleged to have been "made in connection with the making of the contract" between the parties and that the plaintiff suffered substantial economic losses as a result of entering into the contract, the economic loss doctrine bars the claim. *Id.*

For example, in *Gen. Motors Corp. v. Acme Ref* Co., this Court held that the economic loss doctrine barred a plaintiff's fraud in the inducement claim because the only misrepresentations at issue concerned the quality and character

11

of the goods sold. 513 F. Supp. 2d 906, 912–13 (E.D. Mich. 2007). Similarly, in *Orleans Int'l, Inc. v. Mistica Foods, L.L.C.*, the court dismissed a fraudulent inducement claim based on an allegations that the defendants did not intend to keep the promise to purchase specific products from the plaintiff, finding that such allegations were not extraneous to the contract and therefore the economic loss rule applied. 2016 WL 2851349, at *5–6.

Here, Plaintiffs' fraudulent inducement claim is not distinguishable from or extraneous to its breach of contract claim. Plaintiffs' fraudulent inducement claim is based on alleged misrepresentations concerning the nature and quality of the HSN100. For example, Plaintiff alleges that it was fraudulently induced into purchasing the HSN100 by Defendant because "Defendant represented to Plaintiffs that the HSN 100 would be able to sort identified parts for specific defects within industry acceptable failure rates." This type of representation does not fall within Michigan's narrow exception to the economic loss doctrine.

Plaintiffs' reliance on *Lewellyn-Jones v. Metro Prop. Group, LLC* to support its fraud in the inducement claim is misplaced. *Llewellyn* involved alleged fraud in the inducement in connection with the sale of rental properties to investors. *Llewellyn,* 22 F. Supp. 3d at 777–80. Many of the investors were foreign, or at least not from Michigan, and therefore were unable to view the properties prior to purchase. *Id.* at 771. The defendants' allegedly fraudulent conduct included mailing the plaintiffs fraudulent photos of the insides of homes, supplying forged lease documents, lying about the conditions of the properties, and supplying objectively false information regarding rental payments and amounts. *Id.* at 779. The court found that the economic loss rule did not

12

apply to bar the plaintiffs' fraudulent inducement claim because the plaintiffs presented sufficient allegations of affirmative misrepresentations and fraudulent conduct to support their fraud in the inducement claim. *Id.* at 780.

In contrast to *Llewellyn-Jones*, here, the representations identified by Plaintiffs' as fraudulent are really alleged misrepresentations about the nature, quality, and capabilities of the HSN100. Plaintiffs do not allege any independently fraudulent or otherwise sinister activity. Therefore Plaintiffs' fraudulent inducement claim does not satisfy the limited exception to the economic loss rule and cannot survive summary judgment.[5]

### IV. Conclusion

For the above-stated reasons, Defendant's motion for summary judgment is **GRANTED** as to Plaintiffs' fraud-based claims (counts III, IV, and V of the complaint) and as to Plaintiffs' claim for lost profits and consequential damages. Defendant's motion is in all other respects **DENIED**.

---

[5] Because the Court finds that Plaintiffs' fraudulent inducement claim is barred by the economic loss rule, the Court will not address Defendant's position that none of the alleged representations were actually false.

**SO ORDERED.**

                                            <u>s/Nancy G. Edmunds</u>
                                            Nancy G. Edmunds
                                            United States District Judge

Dated: February 11, 2019

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 11, 2019, by electronic and/or ordinary mail.

                                            <u>s/Lisa Bartlett</u>
                                            Case Manager